UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  09-CV-61275-COOKE

MOUNT HAWLEY INSURANCE COMPANY,
a Foreign Corp.,

      *Plaintiff*,

v.

DANIA DISTRIBUTION CENTRE LTD.
Et al.,

      *Defendants*.
_____/

**DEFENDANTS RESPONSE TO MOTION TO STRIKE EXPERT WITNESS**

COMES NOW, Defendants, Lueron Dixon, Tyrone Aikens, Mary A. Butler, Irene Cooper, Karen Drayton, Arlester Fairchild, Clytis Fairchild, Sylvester Fairchild, Dorothy F. Sampson, Rocheda Fairchild, as personal representative for Eddie Fairchild, Michael Fairchild, William H. Fairchild, Jr., Morris Goldwire, Walter Harris, Katrina Harris, Kimberly McNeal, individually, and as parent and natural guardian of K. P., Wanda Peterson, Bessie Pinkney, Lawrence Pinkney, Marie Pinkney, Joanna Price, Barbara Reynolds, Krystal Reynolds, Sherly D. Ross, Valerie Tyler, Debra Wallace as mother and natural guardian of J. W., Kea. W., Key. W., minors, Larayna Wallace, Raynard Wallace, Alecia Williams, Candra Williams as parent and natural guardian of T. I., a minor, and Arthur E. Wilson, (hereinafter referred to as "Residential Defendants"), Dania Distribution Centre, Ltd., Lauris Boulanger Inc., and Dania Distribution Center Condominium Association Inc., (hereinafter collectively referred to as "Corporate Defendants") hereby files the response to Mt. Hawley's Motion to Strike Defendant's Expert Witness List and Incorporated Memorandum of Law, and state as follows:

1. The Residential Defendants commenced the underlying action in state court by filing the original complaint on April 18, 2006.

2. An officer of the Corporate Defendant, the insured corporation, Lauris Boulanger, testified that his subcontractors had accidents on the site that led to gallons of fuel being leaked and/or spilled onto the site. After this testimony, a second amended complaint was filed on January 3, 2007. This complaint based on statements of defendants included allegations that would trigger coverage under the exceptions to the pollution exclusion clause.

3. In this declaratory judgment action, the defendants constitute the residential defendants who were the plaintiffs in the underlying action and the corporate defendants who are the insured. Thus, this declaratory judgment action involves the issues of a duty to defend and a duty to indemnify. As a result, the factual issues and need for expert testimony are more critical than if this was a simple declaratory judgment action on whether coverage existed.

4. Normally, a complaint is filed and the allegations of the complaint are the sole information available to an insurance carrier to determine if coverage is triggered.

5. In the instant case, Mt. Hawley had a second amended complaint and additional information that it could have received from its own insured that should have led to Mt. Hawley providing a defense. In addition, this declaratory judgment action was filed months after the case had ended, and the parties had entered into a stipulated final judgment.

6. Three other insurance carriers, with similar pollution exclusions, recognized a duty to defend and duty to indemnify, and paid $2.7 million to the residents and construction

workers for their injuries.

7. Due to the failure of Mt. Hawley to participate in the mediation-settlement, the parties entered into a stipulated judgment of $19 million.

8. In declaratory judgment action, the construction of an insurance policy is a question of law for the court. However, it is for the jury to determine whether the facts of the case fall within the scope of coverage as defined by the court. Jones v. Utica Mutual Insur. Co., 463 So.2d 1153 (Fla. 1985); Adelberg v. Berkshire Life Ins. Co., 97 F.3d 470 (11th Cir. 1996)(once court has defined relevant terms in insurance policy, any questions involving insured's ability to fulfill those terms is a question of fact for the jury. )

9. Defendants do not dispute that the court can interpret the contract as a matter of law. However, this case does not end at that stage if the court determines that the insured should have provided coverage as a matter of law. Then the trier of fact will have to determine if the insured should have made this determination and whether the stipulated judgment was reasonable.

10. Mt. Hawley argues in its motion to strike experts that the only issue at hand is a legal interpretation of the insurance policy, and that therefore the defendants are not entitled to an expert. However, Mt. Hawley has retained two experts. Mr. Scott who will opine based on his report that the amount of damages ($19 million) is too high. Mr. Hartwig, Mt. Hawley's other expert, will testify that the amount of exposure from the spills/leaks of the vehicles (a covered event under the policy) was insufficient to cause the deleterious health effects.

11. Defendants' expert, Mr. Paige's opinion will not be on the ultimate legal conclusion,

but rather he will opine on second part of analysis, the standard of care. Mr. Paige's opinion is that Plaintiff, Mt. Hawley, breached its fiduciary duty in that it did not appropriately apply the known facts and allegations and provide indemnification and a defense. An expert may testify as to the ultimate issue of fact. Montgomery vs. Aetna Cas. & Surety Co., 898 F.2d 1537, 1541 (11th Cir. 1990)

12. In the instant matter, Mt. Hawley's policy provides an exception to the pollution exclusion for damage caused by leaks/spills from vehicles on the site. At the time of the filing of the second amended complaint, the facts in the underlying case clearly indicated that subcontractors' vehicles were leaking oil, hydraulic fluid, diesel fluid, and/or gasoline on the site. There were sufficient allegations in the complaint to trigger coverage.

13. Because the complaint alleged facts that fairly and potentially brought the suit within policy coverage, Mt. Hawley had a duty to defend.

14. Aside from the second amended complaint, the insured testified that there was existing pollution as well as new pollution caused by fluids leaking from vehicles. Mt. Hawley in keeping with its fiduciary duty should have reviewed all available information in keeping with its standard of care. Mt. Hawley's attorney analysis based on correspondence to the insured and counsel for plaintiff indicates that even with information provided Mt. Hawley was not properly applying the standard of care in this matter.

15. Mr. Paige is opining on the standard of care, and his testimony will assist the court in making a determination on the application of the facts to the court's interpretation of the policy provisions. Expert testimony as to the standard of care should not be

**CLYNE & ASSOCIATES, P.A.**
814 Ponce de Leon Boulevard · Suite 210 · Coral Gables, Florida  33134 · Telephone (305) 446-3244 · Facsimile (305) 446-3538

4

stricken and is frequently utilized by judges and juries in state and federal court.

16. This court has broad discretion to determine what it will hear as evidence in this case, and Mr. Paige's expert testimony will clearly assist the court in determining a critical factual/standard of care issue in this case. Aetna, 898 at 1541 (determination of admissibility of evidence are left to the broad discretion of the district court, and an appellate court should not disturb a district court's evidentiary rulings absent a clear showing of abuse of discretion. United States v. Roper, 874 F.2d 782, 790 (11th Cir. 1989).

## MEMORANDUM OF LAW

### I. This Action is Not Relegated Solely to Issue of Insurance Coverage

There is no dispute that under Florida law, the interpretation of an insurance contract is a matter of law to be decided by the court. Gas Kwick, Inc. v. United Pacific Insur. Co., 58 F.3d 1536 (11th Cir. 1995). While construction of an insurance policy is a question of law for the court; it is for the jury to determine whether the facts of the case fall within the scope of coverage as defined by the court. Jones v. Utica Mutual Insur. Co., 463 So.2d 1153 (Fla. 1985); Zordan By and Through Zordan v. Page, 500 So.2d 608 (Fla. 2nd DCA 1986); *see also* Adelberg v. Berkshire Life Insur. Co., 97 F.3d 470 (11th Cir. 1996)(once court has defined relevant terms in insurance policy, any questions involving insured's ability to fulfill those terms is a question of fact for the jury.)

In the instant matter, defendants assert that there is an exception to the pollution exclusion provision that covers pollution caused by vehicles on the construction site. The court will make a determination of law whether this exception applies. It is then a factual question whether facts of case apply to this coverage. Mr. Paige opinion will assist the trier of fact in

determining the second part of this two part equation. He will be able to organize all the facts at hand and testify as to the industry standard, and what actions on part of Mt. Hawley and its attorneys constituted a breach of fiduciary duty and bad faith.

## II.     Mt. Hawley has Duty of Good Faith

Under Florida law, insurer's duty of good faith is contractual duty and its breach gives rise to action ex contractu rather than in tort. <u>Venn v. St. Paul Fire and Marine Ins. Co.</u>, 99 F.3d 1058 rehearing and suggestion of rehearing denied 114 F.3d 1204 (11th Cir. 1996).  In the instant case, defendants contend that Mt. Hawley did not fulfill its contractual duty and did not act in good faith, because the allegations within the four corners of the complaint clearly triggered coverage.  Furthermore, if there was any question whether the facts of the case would be covered events, Mt. Hawley had duty to investigate and act within appropriate standard of care.  In determining  whether insurer has acted fairly and honestly toward its insured and with due regard for his interests, Florida applies totality of circumstances standard. <u>Talat Enterprises, Inc. v. Aetna Life & Cas. Co.</u>, 952 F. Supp. 773 (M.D. Fla. 1996).  Good faith and fair dealing is implied in all insurance contracts. <u>North American Van Lines, Inc. v. Lexington Insur. Co.</u>, 678 So.2d 1325 (Fla. 4th DCA 1996).  Mr. Paige will address whether Mt. Hawley acted in good faith and dealt fairly with its insured, when it denied a defense to its insured, despite the allegations in the complaint and letters from the insured's counsel, that events triggering coverage had occurred

## III.    Mt. Hawley's Experts Are Listed to Deal with Matters Beyond Coverage

In the instant action, Mt. Hawley contends that there are two questions this Court should address:  Whether there was a duty to defend and whether there was duty to indemnify.  When an insurer relies on an exclusion to deny coverage, "it has the burden of demonstrating that the

allegations in the complaint are cast "solely and entirely" within the policy exclusions." *IDC Construction, LLC v. Admiral Insurance*, 339 F. Supp. 2d 1342 (S.D.Fla. 2004). The duty to defend, which is broader than the duty to indemnify, depends solely on the allegations in the complaint filed against the insured. *Id.* If the complaint alleges facts partially within and partially outside the coverage of the policy, the insurer is obligated to defend the entire suit. In contrast to the duty to defend, "the duty to indemnify is dependent upon the entry of a final judgment, settlement, or a final resolution of the underlying claims by some other means." *Id.* Thus, "whereas the duty to defend is measured by the allegations of the underlying complaint, the duty to indemnify is measured by the facts as they unfold at trial or are inherent in the settlement agreement." *Id.*

The defendants in this group represent both the corporate insured and the plaintiffs in the underlying action. This declaratory judgment action involves the issue of whether the allegations of the complaint triggered coverage and whether the facts in the underlying case created a duty to indemnify.

Mt. Hawley has named two experts, Thomas Scott and Daniel Hartwig. Mr. Scott's report indicates that he will provide an opinion that the settlement and stipulated judgment were too high. Mr. Scott, an attorney, offers an opinion regarding the appropriate medical expert for toxic tort cases. Mr. Hartwig opinion is also beyond the scope of whether coverage applies. Mr. Hartwig report indicates that he will opine on whether the amount of fluids leaked at the site had a causal connection to the injuries suffered by the plaintiffs. Mr. Hartwig's opinion is most interesting, because he, in effects accepts the fact that vehicles were leaking on the site, and moves to issue of causation. Mr. Hartwig opines that the leaks from the vehicles did not cause

the illness of the plaintiffs. [1]

Mr. Paige's opinion is also not related to the legal question of the interpretation of the contract, but rather to whether facts and circumstances would be covered events, and whether Mt. Hawley acted in good faith when it ignored allegations in the Amended Complaint and its insured testimony, that covered events did occur in order to avoid any obligations in this case. This is a standard of care analysis that is appropriate for expert commentary.

In deciding whether to strike defendant's expert, the court should keep in mind "it is an abuse of discretion to exclude the otherwise admissible opinion of a party's expert on a critical issue, while allowing the opinion of his adversary's expert on the same issue." United States of Amerca v. Frazier, 387 F.3d 1244 (11th Cir. 2004)

**IV.    Conclusion**

Mr. Paige is an appropriate expert for issue of breach of fiduciary duty/standard of care because his opinion will be on whether Mt. Hawley had duty to defend and/or indemnify, given the facts and circumstances of this case. His analysis is not regarding interpretation of contract which is left for purview of the court, but rather application of facts to the court's legal determination in light of industry practices.

---

[1] Alecia Williams, one of the residential plaintiffs, jogged 3 miles and then rode her bike 3 miles around the site on daily basis, she contracted aplastic anemia, an incurable disease. Aplastic anemia is known as the "trucker disease" because it is rare disease contracted by exposure to diesel and gasoline.  Plaintiff established causal link between spilled vehicle fluids and illness in the underlying action.  Ms. Williams medical bills were in excess of $200,000 as she was hospitalized at Shands Medical Center for over 6 months in cancer ward.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 7, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF. I also certify that the foregoing document was served via U.S. mail on Debra Wallace at 3766 NW 201 Terrace, Miami Gardens, FL 33055.

        Respectfully submitted,

        **CLYNE & ASSOCIATES, P.A.**
        Counsel for Residential & Corporate Defendants
        814 Ponce de Leon Blvd., Suite 210
        Coral Gables, Florida 33144
        Telephone: (305) 446-3244
        Facsimile: (305) 446-3538

By:     /s/ Reginald J. Clyne
        Reginald J. Clyne
        Florida Bar No. 654302
        Joseph S. Giannell
        Florida Bar No. 41064

## SERVICE LIST

Andrew Edward Grigsby , Jr.
John Joseph Cavo
Hinshaw & Culbertson
9155 S Dadeland Boulevard
Suite 1600, PO Box 569009
Miami , FL 33256-9009
Ph. No.:305-358-7747
Fax: 577-1063
Email: agrigsby@hinshawlaw.com
Email: jcavo@hinshawlaw.com
*Counsel for Mount Hawley Insurance Company*

Debra Wallace, *Pro Se*
3766 NW 201 Terrace
Miami Gardens, FL 33055.

Reginald J. Clyne
Joseph S. Giannell
Clyne & Associates, P.A.
814 Ponce de Leon Blvd., Suite 210
Coral Gables, FL  33134
Ph No.: (305) 446-3244
Fax No.: (305) 446-3538
Email: rjc@clynelegal.com
Email: jsg@clynelegal.com
*Attorneys for Residential & Corporate  Defendants*

Levi G. Williams, Esq.
Fertig & Gramling
200 SE 13th Street
Fort Lauderdale, FL 33316
Ph No.: (954) 763-5020
Fax No.: (954) 763-5412
Email: lgw@fertig.com
*Counsel for Construction Worker Respondents*