UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 09-61275-Civ-COOKE/BANDSTRA

MT. HAWLEY INSURANCE CO.,

    Plaintiff
vs.

DANIA DISTRIBUTION CENTRE, LTD., *et al.*,

    Defendants.
_____/

## OMNIBUS ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

THIS CASE is before me on the Parties' cross motions for summary judgment. This action is a derivative of an underlying state court action in which approximately 90 plaintiffs sued Defendants Lauris Boulanger, Inc., Dania Distribution Centre, Ltd., Dania Distribution Centre, Inc., and Dania Distribution Centre Condominium Association, Inc. (the "Dania Defendants"). The underlying action, *Lueron Dixon, et al. v. Lauris Boulanger, et al.*, Case No.: 06-05393 CA 09 (the "*Dixon*" lawsuit) has settled[1], and the issue now before me is whether there is a genuine issue of material fact that would preclude finding that Mt. Hawley did not breach its contractual obligations when it failed to defend and indemnify the Dania Defendants in the *Dixon* lawsuit. I have reviewed the record, the arguments and the relevant legal authorities. For the reasons explained below, Mt. Hawley's Motion for Summary Judgment (ECF No. 60) is granted and the Defendants' Motions for Summary Judgment (ECF Nos. 58 & 59) are denied.

---

[1] The *Dixon* plaintiffs and the Dania Defendants settled for $19 million dollars as part of a Coblentz agreement. Pursuant to the Coblentz agreement, the *Dixon* plaintiffs have assumed the rights of the Dania Defendants to assert their claims against Mt. Hawley for failure to defend the Dania Defendants in the *Dixon* lawsuit.

## I.  BACKGROUND

The following facts are not in dispute. On or about March 2001, the Dania Defendants purchased approximately 15.5 acres of land adjacent to residential neighborhoods in Dania Beach, Florida (the "Dania Property" or "Property").  Prior to the purchase, the Dania Property was used for dredged sand fill and as a landfill for construction and demolition debris, medical waste, petroleum products and various chemicals.  Groundwater assessments conducted in 2000 and 2001 revealed the presence of contaminants such as phenols, benzene, naphthalene, methane, hydrogen sulphide, ammonia, lead, diesel fuel and chlorinated solvents.  Soil samples collected in late November 2002 revealed that the Property had elevated levels of copper, arsenic, barium, chromium, nickel and lead.  The levels of arsenic were 50% of the allowable levels for a commercial property but twice the allowable levels for residential property.  Large quantities of asbestos were also found on the Dania Property.

On October 28, 2004, Mt. Hawley issued a Commercial General Liability Policy to Dania Distribution Centre, Ltd. and Lauris Boulanger Inc., effective from October 28, 2004 to October 28, 2005.  From the time the Dania Defendants purchased the Property in 2001, until the filing of the *Dixon* lawsuit, the Dania Defendants cleared the Property, prepared the Property for construction and developed the Property, causing pollutants to be dispersed and discharged into the surrounding areas.  Actual construction on the Dania Property began sometime after the Dania Defendants applied for construction permits from the City of Dania Beach, Florida in September 2003.  Notwithstanding the known presence of toxic chemicals on the Property and in the local groundwater, the Dania Defendants admittedly failed to take any steps toward protecting the residents, surrounding properties or workers on the Property from contact with the hazardous pollutants.

**A.  *The* Dixon *Lawsuit***

The *Dixon* plaintiffs, consisting of both construction workers (the "Construction Defendants") and landowners living in areas neighboring the Dania Property (the "Residential Defendants"), pled causes of action in negligence, violation of the Florida Pollutant Discharge Prevention and Control Act, Fla. Stat. § 376.313, nuisance and trespass.  Each of the *Dixon* plaintiffs alleged, individually, that they suffered some form of bodily injury, property damage and/or the loss of use and enjoyment of their real property as a result of the dispersal of pollutants from the Dania Property.

The 90 individual negligence counts allege that the Dania Defendants were negligent in (a) releasing, discharging, emitting or otherwise permitting extremely hazardous toxic chemicals from the soil and groundwater at the Property; (b) removing or transporting contaminated soil and groundwater from the Property; (c) failing to warn the *Dixon* plaintiffs of the toxic contamination and increased risk of personal injuries or property damage; (d) failing to promptly remedy the contamination and migration of toxic chemicals from the Property; (e) failing to warn the *Dixon* plaintiffs of the toxic contamination of the local groundwater; and/or (f) failing to remedy the contamination and migration of toxic chemicals into the local groundwater.

In the 90 counts alleging violation of Fla. Stat. § 376.313, the *Dixon* plaintiffs claim they suffered physical damages as a result of the discharge of pollutants from the Dania Property.  The 21 nuisance counts claim that the removal, transportation and handling of contaminated soil and groundwater by the Dania Defendants created private nuisances that damaged the *Dixon* plaintiffs' residential property.  The remaining 21 counts for trespass claim that the Dania Defendants intentionally engaged in actions that exposed the residential property to toxic chemicals and materials, which resulted in bodily injury.

### B. *The Mt. Hawley Insurance Policy*

The Policy requires Mt. Hawley to defend the Dania Defendants against claims asserted by third parties and obligates Mt. Hawley to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The Policy defines bodily injury as "bodily injury, sickness or disease sustained by a person, including death." Property damage is defined as "physical injury to tangible property, including all resulting loss of use of the property" or "loss of use of tangible property that is not physically injured." Mt. Hawley has no duty to defend claims that are not covered under the Policy including claims excluded by the Policy's pollution exclusion clause, claims excluded by the continuous or progressive injury and damage exclusion clause, and claims arising out of the inhalation, ingestion, physical exposure to or absorption of asbestos, lead or silica dust.

The Policy defines pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The pollution exclusion clause expressly excludes coverage for all liability and expense arising out of or related to any form of pollution, intentional or otherwise, regardless of whether the Dania Defendants incurred any cost or expense. The pollution exclusion clause is applicable to:

> "bodily injury", "property damage" or "personal injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape contamination, growth, inhalation, ingestion, absorption of or exposure to pollutants; (a) at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; (b) at or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; (c) which are or were at any time transported, handled, stored, treated, disposed of or processed as waste by or for any insured of any person or organization for whom [the insured] may be legally responsible; or (d) at or from any premises, site or

4

> location on which any insured or any contractors or subcontractors were directly or indirectly on any insured's behalf while performing operations.

Subsection (d) of the pollution exclusion clause is *not* applicable to:

> "bodily injury," "property damage," or "personal injury" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are brought onto the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

The continuous or progressive injury and damage exclusion clause excludes coverage for bodily injury, property damage, personal injury, advertising injury or any other loss or damage that pre-existed the Policy or were in progress when the Policy became effective. The continuous or progressive injury and damage clause is applicable to:

> any damages because of or related to bodily injury, property damage, or personal and advertising injury (1) which first existed, or are alleged to have first existed, prior to the inception date of this Policy; or (2) which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged bodily injury, property damage, or personal and advertising injury continues during this policy period; or (3) which were caused, or are alleged to have been caused, by any defect, deficiency, inadequacy or condition which first existed prior to the inception date of this Policy.

Mt. Hawley refused to defend the Dania Defendants in the *Dixon* lawsuit, declined to participate in settlement discussions and has denied coverage for the settlement the Dania Defendants entered into with the *Dixon* plaintiffs. Mt. Hawley now asks this Court to declare that it has no duty to defend or indemnify the Dania Defendants in the underlying action due to the Policy's pollution exclusion clause and the construction operations exclusion clause. The Dania Defendants argue that the exclusions do not apply because the negligence, nuisance and trespass claims did not arise from the discharge of pollutants.

## II. LEGAL STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has met its burden the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.*

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (U.S. 1986) (quoting Fed. R. Civ. P. 56(e)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). The court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). However, conclusory allegations, unsupported by specific evidence, will be insufficient to establish a genuine issue of material fact to defeat a motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

## III. ANALYSIS

An insurer's duty to defend "depends solely on the allegations in the complaint filed against the insured." *Trizec Properties, Inc, v. Biltmore Const. Co, Inc.* 767 F.2d 810, 811 (11th

Cir. 1985). The duty to defend arises when the complaint alleges facts that "fairly and potentially bring the suit within policy coverage." *Lime Tree Village Community Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993). If an examination of the allegations of the complaint leaves any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured. *Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3d 1575, 1580-81 (11th Cir. 1995). Where "the alleged facts and legal theories do not fall within a policy's coverage, no duty to defend arises." *Id.* at 1584. An insurer has no duty to indemnify when it has no duty to defend the insured. *See Spencer v. Assurance Co. of America*, 39 F.3d 1146 (11th Cir. 1994).

### A. The Pollution Exclusion Clause

"When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Hartford Acc. and Indem. Co. v. Beaver*, 466 F.3d 1289, 1296 (11th Cir. 2006) (citations omitted). Mt. Hawley argues that it has no duty to defend or indemnify the Dania Defendants because the injuries and damages alleged in the *Dixon* complaint are barred by the Policy's pollution exclusion clause. Defendants argue that certain exceptions to the pollution exclusion clause invoke coverage under the Policy. The Residential Defendants further claim that the *Dixon* complaint's allegations of "odor," "noise" or "dust" invoked a duty to defend the nuisance and trespass claims.

Insurance contracts are to be construed according to the plain language of the policies as bargained for by the parties. *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (citing *Auto-Owners Ins. Co. v. Anderson,* 756 So.2d 29, 34 (Fla. 2000)). Courts look at the insurance policy as a whole and give every provision its "full meaning and operative

effect." *Hyman v. Nationwide Mut. Fire Ins. Co.,* 304 F.3d 1179, 1186 (11th Cir. 2002); *Taurus Holdings, Inc. v. United States Fid. and Guar. Co.*, 913 So.2d 528, 537 (Fla. 2005) ("the language of the policy is the most important factor"). When an insurance policy is considered "ambiguous" it must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). The question of whether the Policy's exclusions apply to the facts alleged in the *Dixon* complaint does not create an issue of ambiguity. *See Deni Assocs. of Fla. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998).

The Policy's pollution exclusion clause applies to bodily injury or property damage *arising out of* the discharge, dispersal or escape of pollutants. The phrase "arising out of" is not ambiguous and should be interpreted broadly. *James River Ins. Co. v. Ground Down Engineering, Inc.*, 540 F.3d 1270, 1275 (11th Cir. 2008). "[A]rising out of is broader in meaning than the term caused by and means originating from, having its origin in, growing out of, flowing from, incident to or having connection with… there must be some casual connection, or relationship that is more than a mere coincidence but proximate cause is not required." *Id.* (internal citations omitted). Therefore, to be clear, the Policy's pollution exclusion clause is applicable to bodily injury or property damage that originates from, flows from or is connected to the discharge, dispersal or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

The Construction Defendants and the Residential Defendants argue that the *Dixon* complaint adequately invokes coverage under the "mobile equipment" exception because it alleges that the Dania Defendants caused "emissions, leakages, seeping, blowing, releases, transfers, dumping, emptying, pouring or otherwise prohibited discharges of pollutants,

contaminants, hazardous substances, petroleum products, [and] petroleum products chemicals of concern" to be dispersed on the Property. Defendants, however, fail to recognize that the pollution exclusion clause contains four disjunctive subsections, meaning that the exclusion applies if any one of the four conditions is met. *See Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1224 (11th Cir. 2009) (terms written in the disjunctive "indicates alternatives and requires that those alternatives be treated separately").

The Policy's mobile equipment exception is only triggered when the injuries complained of resulted from the "discharge, dispersal … absorption of or exposure to 'pollutants' … (d) at or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations." Here, the injuries alleged in the *Dixon* complaint were caused by the discharge and dispersal of pollutants and fall squarely within subsection (a) and subsection (b) of the pollution exclusion clause. Defendants', ignoring the application of the subsection (a) and subsection (b), maintain that the mobile equipment exception invokes Mt. Hawley's duty to defend and indemnify because the *Dixon* complaint "contains allegations that plainly and potentially assert claims related to the leaking, seeping, releasing, emptying, and pouring of petroleum products." In doing so, Defendants effectively ask this Court to reach a conclusion that would require changing the disjunctive word "or" between the clause's four exclusionary provisions to the conjunctive word "and." "Courts are forbidden, however, from engaging in any such rewriting process, even in the guise of 'interpreting' an insurance policy against the company." *Royal Ins. Co. v. Latin American Aviation Services, Inc.*, 210 F,3d 1348 1351 (11th Cir. 2000) (citations omitted).

Even if the injuries complained of fell exclusively within subsection (d), the mobile equipment exception is only applicable to bodily injury, property damage or personal injury

9

"arising out of" the escape of fuels, lubricants or other operating fluids. The *Dixon* plaintiffs fail to allege that they suffered injury as a result of exposure to operating fluids.[2] In addition, although the *Dixon* plaintiffs allege they complained to local authorities regarding the excessive dust, noise and damage that the construction and discharge of pollutants were causing to their health and homes, the actual injuries and damages complained of were caused by the discharge, transportation, contamination and migration of toxic chemicals that were "pollutants" within the definition of the Policy. Indeed, the *Dixon* complaint does not allege a single claim that would preclude the application of Policy's pollution exclusion clause.  As such, Defendants fail to raise a genuine issue of material fact that could fairly or potentially bring the *Dixon* lawsuit within coverage under the Policy.  *See Lime Tree Village Community Club Ass'n, Inc.*, 980 F.2d at 1405.  The pollution exclusion clause completely bars coverage of the allegations in the *Dixon* complaint.  To the extent the *Dixon* plaintiffs suffered injuries from exposure to asbestos, lead or silica dust, those claims are also barred under the Policy.  Mt. Hawley had no duty to defend or indemnify the Dania Defendants in the *Dixon* lawsuit.

### B. The Continuous or Progressive Injury and Damage Exclusion Clause

Notwithstanding the absolute application of the pollution exclusion clause to the facts at issue, Mt. Hawley argues that any injuries alleged by the *Dixon* plaintiffs are also barred by the Policy's continuous or progressive injury and damage exclusion clause. That clause excludes coverage under the Policy from injuries that first exist, begin to take place, or are caused by any condition on the Property prior to the effective date of the Policy.  Accordingly, the application

---

[2] Environmental assessments conducted in 2000 and 2001 revealed the presence of petroleum contaminants in the Property's groundwater. The *Dixon* complaint fails to allege that construction and operational equipment used to develop the Property caused additional petroleum contamination and pollution.

of the clause turns on the timing of any and all relevant events. *See e.g., Montrose Chem. Corp. v. Admiral Ins. Co.*, 913 P.2d 878 (Cal. 1995) (coverage of continuous or progressive injuries depends on the "timing of the accident, event, or conditions causing the bodily injury or property damage"). The Defendants argue that fuel and oil leaks from mobile equipment occurred during the effective Policy period, rendering the continuous or progressive injury and damage exclusion inapplicable. Coverage under the Policy, however, is contingent upon the allegations in the *Dixon* complaint. *Trizec Properties, Inc.*, 767 F.2d at 811. The facts alleged do not show any basis for invoking Mt. Hawley's duty to defend or indemnify the Dania Defendants. Like the pollution exclusion clause, the *Dixon* complaint fails to allege injuries that fall outside of the continuous or progressive injury and damage exclusion clause.

## IV. CONCLUSION

For the reasons set forth above, I **ORDER and ADJUDGE** as follows:

1. Mt. Hawley's Motion for Summary Judgment (ECF No. 60) is **GRANTED**.

2. The Defendants' Motions for Summary Judgment (ECF Nos. 58 & 59) are **DENIED**.

3. The Clerk shall **CLOSE** this case. All pending Motions are **DENIED** *as moot*.

   **DONE AND ORDERED** in Chambers at Miami, Florida this 31st day of January 2011.

   /s/ Marcia G. Cooke
   MARCIA G. COOKE
   United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*